**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

JERRY E. JOHNSON,

Plaintiff,

v.

BRIAN WILLIAMS, *et al.*,

Defendants.

Case No. 2:20-cv-01835-RFB-DJA

**ORDER GRANTING SUMMARY JUDGMENT IN PART**

Before the Court is Defendants' Motion for Summary Judgment (ECF No. 126). The Court has reviewed the record in this case and concludes that there exist some genuine disputes of material fact. Accordingly, the Court grants Defendants' Motion for Summary Judgment in part and denies it in part.

## I. FACTUAL BACKGROUND

Based on its review of the record, as framed by the parties, the Court makes the following findings of fact.

### A. *Undisputed Facts*

Initially, the Court finds that the following facts are undisputed.

Plaintiff Jerry Johnson has been incarcerated at High Desert State Prison ("HDSP") since May 15, 2017. At the outset of his incarceration, Plaintiff was placed in the "Protective Segregation Unit" due to the nature of his conviction. See Offender Information Summary at 3, ECF No. 126-4. At HDSP, individuals placed in protective custody have schedules separate from those in the general population. See Inmate Grievance History at 8–10, ECF No. 126-6 [hereinafter, "Grievance History"]. Those schedules allocate time for individuals to spend outdoors ("outdoor

time"), and time to spend indoors, outside their cell on the prison floor ("tier time"). See generally Yard and Tier Schedules, ECF No. 126-3. Additionally, incarcerated individuals may enroll in courses or find employment ("programming"), which would also allow them to spend time out of their cells. See Def't's Mot. for Summary Judgment at 3, ECF No. 126 [hereinafter, "Mot."].

In or around January 2019, Plaintiff was given a schedule that allotted him four hours of "outdoor time" and 12 hours of "tier time" per week. See Grievance History at 8. On January 3, 2019, Plaintiff filed a grievance seeking a schedule allotting him eight hours of "outdoor time" weekly. See id. That grievance was denied by Defendant Alexis Lozano. See id. Plaintiff properly appealed, and his appeal was denied by Defendant Brian Williams. See id. at 9. Plaintiff appealed again, and his second-level grievance was denied on June 11, 2019, by Defendant Harold Wickham. See id. at 10. In that denial, Defendant Wickham wrote: "Warden Williams is working on a schedule that will suffice your request, however until then your grievance is denied." Id. at 10.

From March 18, 2020, to September 9, 2021, Plaintiff was given a schedule that allotted him a maximum of five hours of "outdoor time" and a maximum of seven hours of "tier time" weekly. See generally Yard and Tier Schedules, ECF No. 126-3. From February 2020 to July 2020, Plaintiff enrolled in various courses. See Offender Information Summary at 2, ECF No. 126-4. On July 7, 2021, Plaintiff began employment as a unit porter. See id.

Plaintiff initiated the instant action by filing a complaint against Defendants on October 1, 2020. Through it, he alleged that Defendants violated his Eighth Amendment rights by denying him meaningful opportunities for outdoor recreation from January to April 2019 (the "2019 Claims") as well as from March 2020 to September 2021 (the "2020 Claims"). See generally Complaint, ECF Nos. 1-1, 7. After discovery, Defendants filed the instant motion for summary judgment on December 22, 2025, and the Court heard argument on the motion on September 8, 2026. See ECF No. 150.

**B. *Disputed Facts***

Next, the Court finds the following material facts are disputed by the parties.

First, the parties dispute how much "outdoor time" and "tier time" Plaintiff actually

received. Plaintiff alleges the following:

For the month of January 2019, Plaintiff was given a total of 7 hours of outdoor time and 25 hours of tier time. For the month of February 2019, Plaintiff was given 9 hours of outdoor time and 29 hours of tier time. For the month of March 2019, Plaintiff was given 9 hours of outdoor time and 29 hours of tier time. For the month of April 2019, Plaintiff was given 9 hours of outdoor time and 25 hours of tier time.

For the month of January 2020, Plaintiff was given a total of 12 hours of outdoor time and 23 hours of tier time. For the month of February 2020, Plaintiff was given a total of 5 hours of outdoor time and 23 hours of tier time. For the month of March 2020, Plaintiff was given a total of 1 hour of outdoor time and 12 hours of tier time. For the month of April 2020, Plaintiff was given no outdoor time and 13 hours of tier time.

The parties further dispute whether each Defendant personally participated in any alleged violation, as well as whether the total time allotted to Plaintiff to be outside his cell—*i.e.* "tier time," "outdoor time," and "programming"—constituted meaningful opportunities for recreation. Additionally, the parties dispute whether, during the alleged period of Defendants' violations, staffing shortages and protective lockdowns warranted the limitation of out-of-cell time. Similarly, the parties dispute whether, in light of these alleged administrative issues, Defendants acted with deliberate indifference to Plaintiff's health and safety.

Thus, on the record before it and as explained below, the Court finds there to be triable issues of material fact, making summary judgment inappropriate at this time.

## II. LEGAL STANDARD

As a preliminary matter, the Court is obligated to construe *pro se* filings liberally. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Under the Federal Rules of Civil Procedure, a party is entitled to summary judgment when they demonstrate "that there is no genuine dispute of material fact and [they] are entitled to judgment as a matter of law" on their claim(s). See FED. R. CIV. P. 56(a); see also Hollis v. R&R Rests., 159 F.4th 677, 683 (9th Cir. 2025) (citation omitted). A fact is material if it "might affect

the outcome of the suit under the governing law." Eat Right Foods Ltd. v. Whole Foods Mkt., Inc., 880 F.3d 1109, 1118 (9th Cir. 2018) (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247 (1986)). Thus, "[a] genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lerner & Rowe PC v. Brown Engstrand & Shely LLC, 119 F.4th 711, 717 (9th Cir. 2024) (quoting Anderson, 477 U.S. at 248). At this procedural posture, the Court is solely charged with determining "whether there is a genuine issue [of fact] for trial;" in other words, this Court will not "weigh the evidence" or make credibility determinations to resolve factual disputes, which are ultimately reserved for the factfinder in this case. See Eat Right Foods Ltd., 880 F.3d at 1118 (quoting Anderson, 477 U.S. at 249); see also Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted). In doing so, the Court "view[s] the evidence in the light most favorable to the nonmoving party and make[s] all reasonable inferences in favor of that party." Eat Right Foods Ltd., 880 F.3d at 1118 (citing Tolan v. Cotton, 572 U.S. 650, 660 (2014)).

Federal courts apply a two-step framework to review motions for summary judgment. First, this Court must decide whether the moving party has met their initial burden by "demonstrating the absence of a genuine issue of material fact." Hollis, 159 F.4th at 683 (citing Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986)). The nature of this initial showing varies depending on which party carries the ultimate burden of proof on a given claim. When the movant does, they "must come forward with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial." Gillings v. Time Warner Cable LLC, 583 Fed. App'x 712, 715 (9th Cir. 2014) (unpublished disposition) (quoting C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)). When the moving party does not carry the ultimate burden of proof, they can merely "point[ ] out that there is an absence of evidence to support the nonmoving party's case." Lerner, 119 F.4th at 717–18 (citation omitted).

If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation

marks omitted). Where a genuine dispute of material fact exists, however, the court will assume the version asserted by the non-moving party. See Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010); Coles v. Eagle, 704 F.3d 624, 629 (9th Cir. 2012) ("We must, in the context of summary judgment, resolve this disputed factual issue in favor of [the non-moving party and] draw all reasonable inferences in his favor. . . .").

## III. DISCUSSION

### A. *Exhaustion*

First, the Court considers whether Defendants are entitled to summary judgment because Plaintiff failed to exhaust his claims. It is undisputed, and the record clearly reflects, that Plaintiff exhausted his 2019 Claims. See Grievance History at 8–10. However, parties dispute the narrow legal question of whether Plaintiffs' 2020 Claims can be considered exhausted. The Court finds that Plaintiff's exhaustion of his 2019 Claims extend to his 2020 Claims, so summary judgment is not warranted on exhaustion grounds.

42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives an individual of their federal rights. Incarcerated litigants must exhaust their administrative remedies before bringing claims under Section 1983. See 42 U.S.C. § 1997e(a). Exhaustion of all available remedies is mandated. See Ross v. Blake, 578 U.S. 632, 642 (2016). Administrative remedies are unavailable when, *inter alia*, administrative procedures operate as a simple dead end, when the administrative scheme is so opaque that it becomes practically incapable of use, or when prison administrators thwart proper use of the grievance process through machination, misrepresentation, or intimidation. See id. at 643–45. Further, "under the continuing-violations doctrine, a properly exhausted prison grievance asserting one, continuing harm or a single course of conduct can exhaust events arising out of the same alleged violation that occur after the grievance was made." Sheltra v. Christensen, 124 F.4th 1195, 1203 (9th Cir. 2024) (internal quotation marks and citations omitted).

The Court finds that Plaintiff's exhaustion of his 2019 Claims extends to his 2020 Claims under the continuing-violation doctrine. Defendants argue that, because Plaintiff's 2020 Claims

arise out of different circumstances—namely, the COVID-19 pandemic—they reflect separate courses of conduct, rather than a single, continuing violation. See Mot. at 11. However, the violation alleged by Plaintiff in 2019—deprivation of outdoor time—is the same violation alleged by Plaintiff to have occurred in 2020. See Grievance History at 10 (seeking the remedy "that Warden Williams approve and implement a yard schedule" giving Plaintiff more hours of outdoor exercise time). It follows that, the courses of conduct that Plaintiff alleges to be violations—creating improper schedules and improperly denying outdoor time—also remain the same from 2019 to 2020. Defendant's arguments regarding the circumstances surrounding the 2020 Claims pertain to whether those deprivations of outdoor time can be *justified* differently, not whether the alleged violations were a continuation of the 2019 violations. As such, whether the 2020 Claims arose out of changed circumstances is a factual question intertwined with the Eighth Amendment inquiry. See *infra*, Part III.D; see also Perttu v. Richards, 605 U.S. 460, 479 (2025) (holding that "parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment"). Thus, the Court finds that Defendants are not entitled to summary judgment on exhaustion grounds.

**B. *Personal Participation***

Second, the Court considers whether Defendants are entitled to summary judgment because they did not personally participate in Plaintiff's alleged violations. Here, the Court grants some Defendants summary judgment.

Liability under Section 1983 arises only upon a showing of personal participation by each defendant. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Personal participation for the purposes of Section 1983 claims can be established if a person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made" or "set[s] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Johnson v. Duffy, 588 F.2d 740, 743–44 (9th Cir. 1978) (internal citations omitted). Generally, the denial of grievances alone is insufficient to establish personal participation. See Ramirez v. Gazala, 334 F.3d 850, 860 (9th Cir. 2003). However, when a defendant becomes aware

of a constitutional violation through the grievance process and fails to remedy it, he may be liable under Section 1983. See Snow v. McDaniel, 681 F.3d 978, 989 (9th Cir. 2012), overruled on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014). Essentially, to be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Even if a prison official should have been aware of the risk, if he was not, then he has not violated the Eighth Amendment[.]" Peralta, 744 F.3d at 1086 (internal quotation marks, citations, and alterations omitted).

Plaintiff alleges that Defendants Ronald Oliver and Calvin Johnson assisted in creating the yard schedules at issue in his 2020 Claims. See Plaintiff's Resp. to Mot. at 5, ECF No. 134 [hereinafter, "Resp."]. However, it is undisputed that Plaintiff did not specifically grieve the 2020 and 2021 schedules—Plaintiff grieved the 2019 schedules and subsequent denial of meaningful out-of-cell time. Further, Plaintiff has failed to put forth any evidence that Defendants Oliver and Johnson were aware of Plaintiffs' 2019 grievances. Thus, even after drawing all reasonable inferences in favor of Plaintiff, the Court finds that there exists no genuine dispute over the fact that Defendants Oliver and Johnson were not aware of the risk of harm alleged by Plaintiff and thereby did not personally participate in the alleged violations. Accordingly, the Court grants summary judgment for Defendants Oliver and Johnson.

As to Defendants Lozano, Williams, and Wickham, it is undisputed that these defendants did personally review and respond in-depth to Plaintiff's 2019 grievances. To add, Defendants Williams and Wickham knew that "conflicting terminology and verbiage" created a potential issue regarding recreation time for individuals in protective custody. Grievance History at 10. Thus, Defendants' Lozano, Williams, and Wickham's participation extend beyond their signature on the grievances. See Peralta, 744 F.3d at 1086. Rather, the record shows that, at minimum, there exists a factual dispute over whether these defendants knew of, and consciously disregarded, a substantial risk of serious harm. See id. Thus, the Court denies summary judgment for Defendants Lozano, Williams, and Wickham ("Defendants") on these grounds.

**C. *Qualified Immunity***

Next, the Court considers whether Defendants are entitled to qualified immunity. "The

doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . . existing precedent must have placed the statutory or constitutional question beyond debate." Mullenix v. Luna, 577 U.S. 7, 11–12 (2015) (internal quotation marks, citations, and alterations omitted).

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to central facts. See Tolan, 572 U.S. at 657 (2014) (*per curiam*). Summary judgment is inappropriate where genuine disputes of material fact prevent a determination of qualified immunity. See Bonivert v. City of Clarkston, 883 F.3d 865, 872 (9th Cir. 2018); Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011); Lolli v. Cnty. of Orange, 351 F.3d 410, 421 (9th Cir. 2003).

The Court finds that, in drawing all reasonable inferences in favor of Plaintiff, Defendants are not entitled to qualified immunity.

The Parties dispute the actual amount of out-of-cell time Plaintiff received. See *supra*, Part I.B. If, as Plaintiff alleges, he was only afforded a few hours of outdoor time *a month*, Defendants' indifference to Plaintiff's lack of recreation would constitute a violation of clearly established law. By 2019, the Ninth Circuit had clearly established that "the Constitution requires jail officials to provide outdoor recreation opportunities, or otherwise meaningful recreation" to incarcerated individuals. Shorter v. Baca, 895 F.3d 1176, 1185 (9th Cir. 2018) (collecting cases); accord Cardenas-Ornelas v. Johnson, 165 F.4th 1234, 1240 (9th Cir. 2026). Accepting Plaintiff's assertions as true, it was clearly established by the aforementioned caselaw that a few hours of recreational time a month would be a constitutional violation.

Moreover, the factual disputes between the parties on the amount of time are also disputes for trier of fact to decide. Indeed, the amount of out-of-cell time that Plaintiff received, and whether that amount was sufficient, given Defendants' administrative concerns, is the central factual question on which Plaintiff's Eighth Amendment claim hinges. See *infra*, Part III.D. The Court

thus finds that, on the current record, Defendants are not entitled to qualified immunity, so summary judgment is not warranted on this ground.

**D. *Eighth Amendment Claim***

Finally, the Court turns to Plaintiff's Eighth Amendment Claim. An incarcerated person's conditions of confinement are subject to scrutiny under the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 31 (1993). The test to determine an Eighth Amendment violation has an objective and subjective prong. See generally Farmer v. Brennan, 511 U.S. 825 (1994). The objective prong asks whether the alleged violation creates a substantial risk of serious harm. See id. at 834. The subjective prong asks whether prison officials had a sufficiently culpable state of mind—that is, whether prison officials were deliberately indifferent to an incarcerated individual's health and safety. See id.

The Court finds that the parties have raised genuine and material factual disputes for both prongs of the Eighth Amendment analysis. As to the objective prong, the parties dispute the factual issue of whether the amount of out-of-cell time given to Plaintiff created a substantially serious risk of harm. See Resp. at 14–17; Reply at 3–6. As to the subjective prong, the parties dispute the factual issue of whether Defendants acted with deliberate indifference, specifically, whether Defendants acted in bad faith to deprive Plaintiff of out-of-cell time. See Resp. at 17–20; Reply at 5–6. Thus, the Court denies summary judgment on this ground.

## IV. CONCLUSION

For the foregoing reasons, the Court orders the following:

**IT IS ORDERED** that Defendants' motion for summary judgment is **GRANTED** as to Defendants Johnson and Oliver. The Clerk of the Court is kindly instructed to terminate these defendants.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment as to Defendants Lozano, Williams, and Wickham is **DENIED**. The Court finds that there exists a genuine, triable dispute of material fact as to whether Plaintiff was deprived of meaningful opportunities for recreation, and, if so, as to whether Defendants acted with deliberate indifference. Thus, Plaintiff's claims against Defendants Lozano, Williams, and Wickham will proceed.

**IT IS FURTHER ORDERED** that the parties shall file a Joint Pretrial Order pursuant to this Court's practices by **November 30, 2026.**

**DATED:** September 30, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**